UNITED STATES DISTRICT COURT

                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
                 v.           )    CRIMINAL NO. 04-10133 RCL
                              )
DERONE BREWINGTON             )
                              )

            DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
              TO RECONSIDER REPORT AND RECOMMENDATION
                 <u>RE: DEFENDANT'S MOTION TO SUPPRESS</u>

*The right of officers to thrust themselves into a home is . . . a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.*

<u>Johnson v. United States</u>, 333 U.S. 10, 14 (1948).

Defendant Derone Brewington respectfully submits this memorandum in support of his motion to reconsider the adoption by this Court of the Report and Recommendation Re: Defendant's Motion to Suppress.

                              I.

In the ruling below, the court invoked a number of constitutional exceptions to the Fourth Amendment's assurance against warrantless searches and seizures.  These included "stop and frisk," "hot pursuit," "exigent circumstances," and "protective sweep."  The court even reached for "inevitable discovery," a doctrine of last constitutional resort.  It invoked

inevitable discovery, the court acknowledged, "out of an abundance of caution," see Recommendation and Report at 66, although the caution was specifically to guard against defendant prevailing, not to ensure against the doctrine being used to tolerate police overreaching.

Ordinarily, doctrines such as "hot pursuit" function as narrow exceptions to the broader constitutional assurances against warrantless arrests and warrantless intrusions.  Here, the doctrines were called into service to salvage the warrantless stop and ultimate entry into the home, even when the grounds sorely tested credulity (e.g., inevitable discovery).  The ruling below is problematic not only for the named defendant; the opinion lies about as legal support for any officer too impatient to await a warrant or to respect a closed door.

Defendant submits that the ruling below stretched the exceptions to their legal limits and beyond, and requires further review by this Court.

II.

In his earlier brief, defendant contended that the ruling below was erroneous in numerous respects.  See Defendant's Objections to Report and Recommendation of United States Magistrate Judge.  Of especial concern, however, was the use of the doctrine of "hot pursuit" as justification for entering the home that defendant shared with his girlfriend.  Undersigned

counsel, being mindful of this Court's order that the defense not repeat past filings, points to this issue as demonstrating why the ruling below must be revisited.

The facts, according to the court below, were that police saw defendant hand an unknown object to a female,[1] and, after an officer stopped him, defendant fled, leaving behind his jacket. In the jacket pocket was defendant's driver's license bearing a Brockton address.  Police lost track of defendant,[2] and returned to the station.  Two officers' voices are recorded on the police frequency stating that they would be seeking a warrant for Brewington ("We have him I.D.'d, we'll be getting warrants for him." Transcript of hearing, day 2 at 2; day 3 at 45).

At the station, police learned about a local Dorchester address, 36 Wrentham Street.  Notwithstanding the earlier resolve to obtain a warrant, officers went to 36 Wrentham, assembled in considerable number, surrounded and entered the house, and arrested defendant.

In sustaining the police decision to forego a warrant, the

---

[1] In his Objections, defendant objected to this finding, on the grounds that police were not in the position to make the alleged observation, and that the officer who ultimately approached Brewington did not make the decision to stop him until he was steps away from him, impeaching the claim that a hand-to-hand transaction was observed.

[2] The government argued that the canine lost the scent near 36 Wrentham Street.  Police radio transmissions stated that the canine lost the scent at the rear of an apartment complex at 59-69 Msgr. Lydon Way.  Transcript, day 3, at 44.

court below ruled that "hot pursuit justified entry into the first floor apartment." Report at 48-49. Cases supporting the "hot pursuit" of a suspect into a home break out into two categories. One is the pursuit of the dangerous and unknown suspect; the other is the suspect who is seen fleeing into a residence within the view of the police. The former application appears in Warden v. Hayden, 387 U.S. 294 (1967), where two cab drivers chased a robbery suspect until he ran into a house and police, arriving five minutes later, entered the house without a warrant. Cases of this sort have the qualities one would expect: unknown or dangerous suspects; public risk; and an immediacy or breathlessness about the police pursuit. See Archibald v. Mosel, 677 F.2d 5 (1st Cir. 1982) ("hot pursuit" exception upheld when a man called the police and told them he had chased a robber into a certain apartment, police met him at that apartment, knocked on the door with no answer, and heard noises inside the apartment, and then entered, guns drawn). In this category of cases, the courts sometimes tolerate a pursuit of greater duration, provided it is continuous. For example, in United States v. Scott, 520 F.2d 697 (9th Cir. 1975), the police pursued four men who had robbed a bank with a sawed off shotgun and revolvers. That pursuit lasted two hours, and ended with a warrantless entry into an apartment, where the suspects were arrested. Further, in United States v. Mitchell, 457 F.2d 513 (6th Cir.1972), the armed

suspect robbed a bank, during which he shot at a bank employee and at one point took a hostage.  After 1.5 hours, the police located on of his getaway cars parked in front of his house, and arrested him without a warrant after entering the house.

The second type of hot pursuit appears in United States v. Santana, 427 U.S. 38 (1978).  In Santana, the police approached a woman suspected of drug dealing in her doorway.  As the police identified themselves to her, she ran into the house. The Court upheld the police's decision to follow the woman into the house. See United States v. Soto-Beniquez, 356 F.3d 1, 35-37 (1st Cir. 2004) (two officers running after two separate suspects, one suspect runs into a house and the officer follows); United States v. Lopez, 989 F.2d 24 (1st Cir. 1993) (when police arrived at suspect's apartment and suspect fit description of man with sawed off shotgun called in earlier, suspect ran into the building, and police followed); United States v. Jones, 204 F.3d 541 (4th Cir. 2000) (officers observed a drug transaction, approached the suspect who ran into his house and locked the door, police followed), see also 3 W. LaFave 6.1(d) n.123 (listing numerous cases where courts have upheld chases to be "hot pursuit").

Neither ground of hot pursuit applies here.  After the police lost the defendant and returned to the station to get a warrant, the immediacy or urgency apparent in the Hayden line of cases no longer existed.  Even in the taped words of the police,

that "We have him I.D.'d, we'll be getting warrants for him," see Transcript of hearing, day 2 at 2; day 3 at 45, there is no sense of urgency; after all, the suspect was known and a warrant would be obtained in the ordinary course.  Indeed, one would hardly expect otherwise.  After all, this was an unexceptional case up to this point; police claimed to have witnessed a street transaction and the suspect, now known to the police, had fled.  There was little to commend the police to renew the effort, once a local address was found, by surrounding the home and precipitating defendant's arrest.[3]  No officer had seen him enter the house, unlike in Santana, and he was not an unknown suspect, unlike in Archibald and Jones, among other cases.

At bottom, "[t]his is simply not a case where there was compelling need for official action and no time to secure a warrant," United States v. Adams, 621 F.2d 41, 45 (1st Cir. 1980), citing Michigan v. Tyler, 436 U.S. 499, 509 (1978), evidenced by the officers initial resolution to seek a warrant.  See also Welsh v. Wisconsin, 466 U.S. 740, 753 (1984) (under circumstances where policemen traced suspect to his home, "the claim of hot pursuit is unconvincing because there was no

---

[3] At its inception, this was a police stop of a drug suspect. This occurs not infrequently in Boston, and in other places in Massachusetts.  Statistics show the frequency of drug offenses. In 1999, the latest available year, 3728 males were arrested for drug related offenses in Boston. "State and National Crime Data." http://db.state.ma.us/msp/select.asp.

immediate or continuous pursuit of the petitioner from the scene of a crime").

Courts have declined to uphold a warrantless search based on the "hot pursuit" exception when officers are not chasing the suspect, or when a chase is not continuous.  See O'Brien v. City of Grand Rapids, 23 F.3d 990, 997 (6th Cir.1994) ("hot pursuit" exception did not apply because the first officer on the scene did not choose to chase the suspect at the initial confrontation and instead called for backup to surround the house, thereby controlling the situation); United States v. Morgan, 743 F.2d 1158 (6th Cir.1984)(no hot pursuit because after observing suspects put what appeared to be automatic weapons in a car, the police took time to assess the situation at a coffee shop before proceeding to the suspect's home); State v. McNeal, 162 W.Va 550, 557 (1978) (holding state did not meet its burden of showing exigency because no one saw the suspect enter the premises and "surely four of the five police officers could have guarded the personal residence while the fifth sought a warrant").

Applying the "hot pursuit" exception to this case stretches the concept "beyond its purpose" and "beyond the breaking point." Cf. Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 n.2 (1992) (referring to the "elastic concept" of imminence being stretched "beyond its breaking point" in applying it to "some day intentions" with no concrete plans).  Indeed, courts have

expressed concern where police create the exigency which propels their intrusion into a home.  In Johnson v. United States, 33 U.S. 10, 15 (1948), the Court found that there was no reason "for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate."  Johnson has been followed, among other cases, in the recent Third Circuit decision in United States v. Coles, 2006 U.S. App. LEXIS 3122 (3rd Cir. Feb. 9, 2006).  Coles and a host of cases stand for the proposition that police cannot create their own exigency.  In Coles, for example, the court concluded that "[w]hatever exigencies might have arisen after the police announced their presence at the door cannot excuse their failure to first obtain a search warrant."  Coles, 2006 U.S. App. LEXIS 3122 at *16-*17.  See also United States v. Acosta, 965 F.2d 1248 (3rd Cir.1992); United States v. Thompson, 700 F.2d 944 (5th Cir.1983); United States v. Johnson, 904 F.2d 443 (8th Cir.1990); and United States v. Halliman, 923 F.2d 873 (D.C.Cir.1991).

    Indeed, it clear from the record that, even prior to the arrival at the home, police intended to enter.  One of the testifying officers admitted that the "decision was to return there without benefit of warrant to make entry at 36 Wrentham Street."  Transcript, day 3 at 45.  Plainly, in surrounding the home, police intended no less than to effect the arrest of

defendant.  Lesser means were not undertaken, such as a discrete surveillance where police could have ensured that there was no "risk that the suspect may escape from the residence undetected." Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999) (discussing "the four recognized categories of exigent circumstances").

For all of these reasons, defendant submits that this Court should review the finding below that police were justified in foregoing a warrant.

### III.

There are a host of other issues raised by the ruling below, detailed more fully in Defendant's Objections to Report and Recommendation of United States Magistrate Judge.  The initial stop was unsupported on the evidence, as police could not have seen the alleged hand-off.  Nor was a "protective frisk" justified; the officer testified that, when he frisked defendant, he left defendant's hands free and himself unguarded. Transcript, day 2 at 37-8.  This hardly supports a frisk based on fear of defendant.  The ruling that evidence might be destroyed if police did not enter the apartment begs the question: what evidence?  Defendant, at most, was seen handing something to the female, not taking something back.  The characterization of defendant as violent, even if the court credited the officer's claim that defendant assaulted him to get free of the officer, is

unsupported on the record (defendant has a single assault and battery conviction, apparently with a basketball). Defendant submits that these and other issues raised in defendant's objections should be addressed in further proceedings in this Court.

## CONCLUSION

For those reasons, this Court should grant the Defendant's Motion to Reconsider His Motion to Suppress.

> DERONE BREWINGTON
> By his attorney,
>
> /s/ Charles P. McGinty
>
>
> Charles P. McGinty
>    B.B.O. #333480
> Federal Defender Office
> 408 Atlantic Avenue, 3rd Floor
> Boston, MA  02110
> Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 15, 2006.

> /s/ Charles P. McGinty
>
> Charles P. McGinty